UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALVEEN BARTHOLEMOW
KAMLESHAN,

                      Petitioner,

        v.

TODD BLANCHE, Acting Attorney
General of the United States, et al.,

                      Respondents.

CASE NO. 2:26-cv-00908-TL

ORDER ON PETITION FOR
HABEAS CORPUS

        This matter is before the Court on Petitioner Alveen Bartholemew Kamleshan's

Application for a Writ of Habeas Corpus ("habeas petition"). Dkt. No. 1. Petitioner, who has

been detained at the Northwest ICE Processing Center ("NWIPC") for over six months since his

order of removal became final, seeks immediate release on three grounds: first, because his

continued detention is indefinite and therefore unconstitutional under *Zadvydas v. Davis*, 533

U.S. 678, 690 (2001); second, because his re-detention while he was released on an Order of

Supervision ("OSUP") did not comport with the constitutional requirements of due process; and

ORDER ON PETITION FOR HABEAS CORPUS – 1

third, because his re-detention also violated applicable regulations of the U.S. Department of Homeland Security ("DHS"). *Id*. Petitioner also seeks relief regarding potential re-detention and potential removal to a third country. *Id.* Respondents are Todd Blanche, Acting United States Attorney General; MarkWayne Mullin, Secretary, DHS; Julio Hernandez, Acting Seattle Field Officer Director, United States Citizenship and Immigration Services ("USCIS"); Bruce Scott, Warden of NWIPC, and United States Immigration and Customs Enforcement ("ICE") (collectively, "Respondents").[1] Respondents filed a return memorandum asserting that: (1) Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(6); (2) Petitioner's request for injunctive relief regarding re-detention are premature; (3) any claims Petitioner might assert related to potential third-country removal should be adjudicated via a nationwide class action pending in the District of Massachusetts; (4) Petitioner's facial challenge to the third-country removal policy is insufficiently supported; and (5) the Court has no jurisdiction to hear Petitioner's APA claim regarding DHS regulations. Dkt. No. 7. Having considered Petitioner's petition, Respondents' return, Petitioner's traverse (Dkt. No. 10), and the relevant record, the Court GRANTS in part and DENIES in part Petitioner's petition and ORDERS Petitioner's immediate release.

## I.    BACKGROUND

Petitioner was born in 1975 and has lived in the United States since childhood. Dkt. No. 1 at 8–9. His birthplace, on an island in the Pacific Ocean, is now part of the nation of the Solomon Islands, which established its independence in 1978. *Id.* at 8. At the time Petitioner was born, his birthplace was classified as a "protectorate" under British colonial rule. *Id.*

//

//

---

[1] As used in this Order, "Respondents" does not include Respondent Scott, who has not appeared in this matter.

ORDER ON PETITION FOR HABEAS CORPUS – 2

Petitioner asserts, and Respondents do not refute, that he is stateless—that is, that he has citizenship in no country. Although Petitioner was born within the British Empire, Solomon Islands residents were not given British citizenship at birth. *Id.* When the Solomon Islands gained its independence, it did not automatically grant citizenship to all its residents or to people who had been born within its territory. *Id.* at 9. Rather, automatic citizenship was granted to certain individuals based on ethnicity and ancestry. *Id.* Others desiring citizenship, even those who were born there, were required to affirmatively apply for it within two years of independence. *Id.*

Petitioner did not meet the ethnicity and ancestry requirements for automatic citizenship of the Solomon Islands upon statehood. *Id.* Through no fault of his own, Petitioner never applied for or received citizenship in the Solomon Islands before the application period closed when he was approximately six years old. *Id.* Petitioner immigrated to the United States with his family in childhood and was granted lawful permanent resident status.[2] *Id.* After Petitioner pleaded guilty to two drug-related offenses in 2011, he was placed in removal proceedings and an immigration judge ordered him removed to the Solomon Islands. Dkt. No. 1 at 10. His removal order became final on September 25, 2012. Dkt. No. 1 at 6–7. After ICE unsuccessfully attempted to obtain travel documents from the Solomon Islands, apparently because of Petitioner's lack of citizenship or lack of evidence of citizenship in that country, it determined that Petitioner could not be removed and released him on an OSUP on or around December 21, 2012. *Id.* Petitioner was granted a work permit and required to check in regularly with ICE. Petitioner asserts, and

---

[2] Petitioner asserts that he was two or three years old when he immigrated to the United States. Dkt. No. 1 at 9. Respondents do not contest this, and the record contains no primary documents from that time. However, DHS Form I-213, which documents Petitioner's encounter with, and detention by, Border Patrol, refers to an unidentified immigration record, which Respondents have not provided to the Court, indicating that Petitioner "originally entered the United States on 7/12/1986." Dkt. No. 9-1 (DHS Form I-213) at 3. Petitioner would have been 10 or 11 years old at that time.

Respondents do not deny, that he complied diligently with the check-in requirements of his OSUP for the next 13 years. *Id.* at 7; *see generally* Dkt. No. 7.

On or about September 8, 2025, Petitioner was driving with his family near the Washington–Canadian border when they took a wrong turn that led them to a Canadian port of entry. *Id.* at 11. Canadian officials, noting that such mistakes were a frequent occurrence, instructed them to turn around and explain the situation to U.S. Border Patrol agents. *Id.* When the family passed back through the U.S. port of entry, Border Patrol agents detained Petitioner, telling his family to return for him in a few hours after they had time to "clear some things up." *Id.* Petitioner was then taken to the Blaine Border Patrol Station and told he would be held there for a "couple of days." *Id.* Petitioner alleges, and Respondents do not deny, that he was never given any explanation for his detention (beyond a need to "clear things up") or allowed to respond to the reasons for detaining him. *Id.* On or about September 9, 2025, Petitioner was moved to the NWIPC, where he has been confined ever since. *Id.*

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that they have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

ORDER ON PETITION FOR HABEAS CORPUS – 4

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

### III.    DISCUSSION

The Court begins with a caution from the Supreme Court in *Zadvydas*: "The proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect. . . . [W]here detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." 533 U.S. at 690 (citation modified).

Petitioner seeks three major categories of relief: immediate release from detention, an injunction regarding the procedures attending any future re-detention, and injunctive relief related to potential third-country removal—that is, removal to any country other than the Solomon Islands. The Court addresses these in turn.

**A.    Continued Detention**

**1.    Legal Framework for Detention under 8 U.S.C. § 1231**

Petitioner is detained under 8 U.S.C. § 1231, a provision of the Immigration and Nationality Act ("INA"). Under Section 1231(a)(1), "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1). Section 1231(a)(2) mandates the detention of the noncitizen during the removal period. *Id.* § 1231(a)(2).

ORDER ON PETITION FOR HABEAS CORPUS – 5

Finally, Section 1236(a)(6) authorizes the continued detention of noncitizens after the expiration of the removal period:

> [A noncitizen] ordered removed who is inadmissible under section 1182, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the [Secretary of Homeland Security] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* § 1231(a)(6).[3]

There is no temporal limit on the length of detention in the statute, and the Supreme Court noted in *Zadvydas* that 90 days is not intended to be a statutory maximum, reasoning:

> Congress enacted the present law, which liberalizes pre-existing law by shortening the removal period from six months to 90 days, mandat[ing] detention of certain criminal [noncitizens] during the removal proceedings and for the subsequent 90-day removal period . . . . While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months.

533 U.S. at 698–701 (citing Juris. Statement in *United States v. Witkovich,* O.T. 1956, No. 295, at 8–9.)

The *Zadvydas* Court went on to hold that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal under Section 1231(a)(6), *id.* at 699, instead construing the statute to contain an "implicit 'reasonable time' limitation," *id.* at 682. "[F]or the sake of uniform administration in the federal courts," the Court recognized six

---

[3] Although 8 U.S.C. § 1231 refers to "the Attorney General" as having responsibility for detention and removal of noncitizens, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 441(2), 116 Stat. 2135, 2192 (2002), transferred this authority to the Secretary of the Department of Homeland Security. *See also* 6 U.S.C. § 251.

ORDER ON PETITION FOR HABEAS CORPUS – 6

months as that time limitation. *Id.* It further found that if a statute were to permit indefinite detention of a noncitizen, that would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.*

Ultimately, the Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* at 701. The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. Nevertheless, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Therefore, "[a]fter this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

Petitioner argues that his detention exceeds the presumptively reasonable period under *Zadvydas*, that there is no likelihood of removal in the reasonably foreseeable future, and that his continued detention is therefore unconstitutional. *See* Dkt. No. 1 at 37–38. Respondents acknowledge that six months is the presumptively reasonable period for removal under *Zadvydas* (Dkt. No. 7 at 10), that Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6) and has been continuously detained since September 8, 2025 (*id.* at 9–10), and that "[i]f a petitioner meets his evidentiary burden, the government must then introduce evidence to refute the petitioner's

ORDER ON PETITION FOR HABEAS CORPUS – 7

assertion" (*id.* at 10). Then Respondents ignore entirely the burden-shifting framework they have just explained, neither engaging with any of Petitioner's arguments that *Zadvydas* requires his release nor offering any reason why *Zadvydas* should not control. The Court therefore applies the relevant test without the benefit of any argument from Respondents.

**2.    The Length of Detention Exceeds What Is Presumptively Reasonable**

The first inquiry under *Zadvydas* is the length of a noncitizen's detention after their removal order becomes final. Where that period exceeds six months, the Court will not presume that detention is reasonable or that it serves the purpose of effecting removal.

As of the date of the filing of Respondents' response, Petitioner had been detained approximately of 293 days, or over nine and a half months, since his removal order became final on September 25, 2012 (approximately 88 days in 2012 and approximately 205 days in 2025–26). Therefore, his detention is not presumptively reasonable.

**3.    Petitioner Has Met His Burden Under *Zadvydas***

Here, Petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, for two reasons. First, the government previously determined he could not be removed to the Solomon Islands, the country that contains his place of birth. Second, Petitioner is a stateless individual with citizenship in no country. Courts routinely find that noncitizens who cannot be returned to any country where they are citizens have met their initial burden under *Zadvydas*. *See Elshourbagy v. Bondi*, No. C25-2432, 2025 WL 3718993, at *4 (W.D. Wash. Dec. 23, 2025) (collecting cases where noncitizens have met this burden by showing they have been granted withholding of removal from their home country).

//

//

ORDER ON PETITION FOR HABEAS CORPUS – 8

Based on these supports for Petitioner's claim, the Court finds that Petitioner has met his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

**4.        Respondents Have Not Met Their Burden Under *Zadvydas***

Respondents do not argue that there is a significant likelihood that Petitioner can be removed in the foreseeable future—they do not engage with the *Zydvydas* framework at all beyond a simple statement that "In this case, ERO is seeking removal to Soloman [*sic*] Islands." Dkt. No. 7 at 11. At most, Respondents assert, in responding to a different argument Plaintiff has raised, that "ICE has . . . submitted travel document requests to countries that it believes Petitioner is a citizen of: Fiji and the Solomon Islands." *Id.* at 14. But there is no explanation of why or whether the Solomon Islands' position on receiving Petitioner might have changed, nor is there any justification for the present "belie[f]" that Petitioner is a citizen of Fiji—a belief that has no foundation whatsoever in the record before the Court. In fact, Respondents report that the Fijian Consular has already determined that Petitioner is *not* a Fijian citizen. Dkt. No. 7 at 10 (citing Dkt. No. 8 (Rosa Decl.) ¶ 19). As for the Solomon Islands, the modern state encompassing Petitioner's birthplace—as Respondents were aware at the time of his re-detention (*see* Dkt. No. 9-1 (DHS Form I-213) at 2, 3)—"an electronic travel document request was sent to the Soloman [*sic*] Island[s] Embassy" only on March 25, 2026. Dkt. No. 7 at 10. But Petitioner's habeas petition was filed on March 17, 2026. Respondents cannot overcome the meritorious arguments in Petitioner's pending habeas petition by simply submitting an online request it could have made months ago. Even assuming *arguendo* that these sudden efforts on the part of Respondents are made in good faith, the *Zadvydas* Court specifically rejected the argument that detention is "lawful as long as 'good faith efforts to effectuate . . . deportation continue . . .'" 533 U.S. at 702. The required showing is a "significant likelihood of removal in the reasonably

ORDER ON PETITION FOR HABEAS CORPUS – 9

foreseeable future," and there is *no* evidence that Petitioner can or will be removed to the Solomon Islands (or to Fiji, or anywhere else) in the foreseeable future—only that ERO has renewed a "request" that has already been denied. This cannot overcome the contrary showing Petitioner has made. *See*, *Elshourbagy*, 2025 WL 3718993, at *5 ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future." (quoting *Hoac v. Becerra*, No. C25-1740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025))).

For these reasons, Respondents have failed to rebut Petitioner's showing that there is no significant likelihood of his removal in the reasonably foreseeable future.

*   *   *

Applying the controlling precedent, as the Court must, it is clear that: (1) Petitioner's detention is beyond what is presumptively reasonable; (2) Petitioner has shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"; and (3) Respondents present no evidence that there is a significant likelihood of removal in the reasonably foreseeable future. Accordingly, the Court finds that Petitioner is entitled to habeas relief under *Zadvydas* and should be immediately released from custody.

**B.      Re-Detention**

In addition to alleging that his detention has become unconstitutionally indefinite, Petitioner also alleges that his detention is unlawful because of the deficient procedures by which he was re-detained—which he claims violated both the Constitution and DHS's own regulations. Dkt. No. 1 at 38–40. As relief, Petitioner seeks his immediate release and a permanent injunction preventing Respondents from re-detaining him unless specific procedural criteria are met. *Id.* at 43–44.

1.      **Request for Injunctive Relief**

Because the *Zadvydas* analysis provides all the relief Petitioner seeks regarding his release, the Court considers these arguments solely for the purpose of considering his request for injunctive relief regarding future re-detention. However, the question of whether Petitioner's 2025 re-detention was lawful remains central—and Respondents offer no response to *either* of the claims that it was not. *See generally* Dkt. No. 7. Rather, they argue only that Petitioner's request for injunctive relief regarding any *future* re-detention is premature. *Id.* at 11. Respondents explain: "There is already a process for revoking an Order of Supervision ('OSUP'). DHS established a clear regulatory framework in 8 C.F.R. §§ 241.4 and 241.13 . . . . This Court should examine ICE's compliance with the procedures set forth for revocation of OSUP—not create new procedures." *Id.*

The Court is happy to oblige Respondents' request that it "examine ICE's compliance" with 8 C.F.R. §§ 241.4 and 241.13. The request is a strange one, however, because, as Petitioner notes, "Respondents put forth no evidence that they complied with these regulations, let alone with due process." Dkt. No. 10 at 6. Section 241.13(i)(2) provides that "The Service may revoke [a noncitizen]'s release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Further, Section 214.13(i)(3) provides:

> Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification. The [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include

ORDER ON PETITION FOR HABEAS CORPUS – 11

> an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

"The regulation was intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Saadhom v. Bondi*, No. C26-425, 2026 WL 698786, at *8 (W.D. Wash. Mar. 12, 2026) (citation modified) (citing *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025)).

There is no question that DHS did not comply with its own regulations in re-detaining Petitioner, and therefore denied him the process he was due. Not only does the undisputed record indicate that Petitioner was never provided with an "initial informal interview," but, even now, Respondents have not indicated any valid reason for re-detaining him or revoking his OSUP (nor do they offer any evidence that his OSUP has actually been formally revoked). *See generally* Dkt. No. 7.

> Indeed, Respondents claim only that when border agents encountered Mr. Kamleshan in September they "followed guidance and determined that Petitioner was not eligible for release, prior to turning Petitioner over to ICE." Dkt. 7 at 9. As evidence, they provide a second-hand declaration that "[a] determination was made to detain Petitioner[,]" Dkt. 8 at 4, and an unsworn statement on an arrest report: "Due to the most recent guidance in the August 22 [sic] pursuant to the presidential proclamation, KAMLESHAN was not eligible for release from OFO custody." Dkt. 9-1 (I-213 Arrest Report) at 3. Respondents provide no indication of what the actual basis for the re-detention was other than "guidance," so do not indicate whether it was due to any alleged violation of the conditions of supervision or due to a determination that Mr. Kamleshan could now be removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i). 3 The record is also clear that Respondents provided no notice to Mr. Kamleshan of the reason for revoking his release, performed no "informal interview" where he could respond or present evidence, and conducted no review of whether revocation was appropriate.

Dkt. No. 10 at 6–7 (alterations in original) (footnote omitted). These uncontested facts support

ORDER ON PETITION FOR HABEAS CORPUS – 12

Petitioner's argument (which goes unrebutted by Respondents) that all criteria of the applicable legal test are satisfied:

> [T]he requirements for injunctive relief are met. His prospective unlawful re-detention would constitute an irreparable injury that could not be redressed by an award of damages. Second, the balance of hardships is completely in Mr. Kamleshan's favor: Mr. Kamleshan risks unlawful re-detention, while Respondents suffer no hardship by being prevented from following their unlawful re-detention practices. Finally, the public interest affirmatively would be served by barring Respondents' unlawful practice.

Dkt. No. 1 at 38–39. The Court agrees. On the undisputed facts, "Respondents have already re-detained Mr. Kamleshan once in violation of due process and their own regulations." Dkt. No. 10 at 7. Therefore, the first prong under *eBay* is satisfied. The existence of DHS regulations, which Respondents ignored, is clearly insufficient to prevent another similar violation. Courts in this District, as well as others, have ordered release of noncitizens subject to final orders of removal because Respondents had not followed federal regulations when re-detaining them. *See Saadhom*, 2026 WL 698786, at *9 (collecting cases). This pattern of behavior convinces the Court that, absent a court order, this type of deprivation can and may likely happen to Petitioner yet again. So the second prong of the *eBay* test is satisfied as well.

Finally, prongs three and four of the *eBay* factors merge when the Government is the party opposing the issuance of injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Petitioner is correct that Respondents suffer no hardship by being prevented from following unlawful re-detention practices. Respondents confirm that they are required to follow the federal regulations when re-detaining noncitizens, but do not deny that they violated those regulations when they detained Petitioner before. Ordering Respondents to follow the law does not work a disservice to the greater public; rather, it reinforces constitutional rights. *See Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public

interest to prevent the violation of a party's constitutional rights."); *see also Jorge M.F. v. Wilkinson*, No. C21-1434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) ("[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.") (citation modified). Therefore, the balance of hardships and public interest weigh in Petitioner's favor.

The Court therefore finds that injunctive relief is warranted regarding the procedures required for any future re-detention of Petitioner.

**2.      Request for Pre-Deprivation Hearing Requirements**

Petitioner makes specific requests within his broader request for the Court to order that he not be re-detained without notice and an opportunity to be heard. The Court will address each in turn.

First, Petitioner requests that before he is re-detained, he be given a hearing before a neutral decision maker at which Respondents must prove by clear and convincing evidence that he is a danger or a flight risk. Dkt. No. 1 at 43–44, However, the Court cannot conclude that due process requires a pre-detention hearing before an IJ, regardless of circumstances. *See Le v. Bondi*, No. C25-2454, 2026 WL 309239, at *6 (W.D. Wash. Feb. 5, 2026). Moreover, a finding that Petitioner is a danger or a flight risk is not the only reason he can be lawfully re-detained; he may be re-detained upon revocation of his OSUP if, for example, "on account of changed circumstances, the [government] determines that there is a significant likelihood that [he] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Next, Petitioner requests that Respondents not be able to re-detain him without first: (1) obtaining a valid travel document, (2) providing the document to Petitioner and his counsel, (3) offering Petitioner the opportunity to leave on his own within two months, and (4) "making concrete arrangements for [Petitioner]

ORDER ON PETITION FOR HABEAS CORPUS – 14

to be put on a flight to the Solomon Islands in the reasonably foreseeable future." Dkt. No. 1 at 44. The requested guidelines are not reflected in Section 241.13, and Petitioner cites no statutory authority that supports this request. Therefore, the Court denies this request.

**C.    Third-Country Removal**

In addition to his immediate release, Petitioner requests two orders related to his potential removal to a third country: one "preventing removal to a third country without notice and a meaningful opportunity to respond in compliance with the [INA] and due process in reopened removal proceedings," and one "barring removal to any third country pursuant to Respondents' punitive removal policy." Dkt. No. 1 at 5.

Respondents offer three arguments against Petitioner's requests related to third-country removal: first, that Petitioner is a member of a nationwide plaintiff class certified in the District of Massachusetts and should be required to await whatever relief he is granted as a class member rather than pursuing his own claims; second, that Plaintiff's arguments that third-country removal policy are "not applicable"; and third, that to the extent this claim is brought under the APA it "must be dismissed for lack of Subject Matter Jurisdiction." Dkt. No. 7 at 12–15.

**1.    Respondents' *D.V.D.* Argument Fails**

Respondents contend that Petitioner cannot obtain relief because he is a member of the plaintiff class in *D.V.D. v. Department of Homeland Security,* No. C25-10676, 2025 WL 942948, at *1 (D. Mass. Mar. 28, 2025). The Court has repeatedly rejected this argument, most recently in *Keskin v. Bondi*, No. C25-2737, 2026 WL 412294, at *4–5 (W.D. Wash. Feb. 13, 2026), and incorporates and adopts its *Keskin* analysis here in full.

**2.    Injunctive Relief Regarding Removal Procedures Is Warranted**

Petitioner presents the Court with an overview of the legal framework governing the countries to which a noncitizen may be removed, and under what circumstances. Dkt. No. 1 at

ORDER ON PETITION FOR HABEAS CORPUS – 15

21–25. *Only* if it is "impracticable, inadvisable, or impossible" to remove a noncitizen to (a) the country the noncitizen has designated for removal; (b) the country of which the noncitizen is a subject, national, or citizen; (c) the country from which the individual was admitted to the United States, or which contains the port from which they disembarked for the United States or a contiguous territory; or (d) the non-citizen's country of birth (or the country that now contains their birthplace) or immediate previous residence may the government remove the noncitizen to "another country whose government will accept [them] into that country." *Id.* at 22 (citing U.S.C. § 1231(b)(2)(E)). Even then, the government may not remove any person to a country where they will be persecuted or tortured. *Id.* (citing 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.16, 1208.16). Where third-country removal is anticipated, due process requires, *inter alia*, "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)," *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); that the noncitizen be asked whether they fear persecution or harm upon removal to the third country, and their response memorialized in writing, *id.*; and that notice of the country to which the noncitizen will be removed not be provided "last minute," but with sufficient time that the noncitizen have a meaningful opportunity to apply for fear-based protection from removal, *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

If a noncitizen claims fear of removal to a designated third country, courts in this District have repeatedly held that ICE must give the petitioner an opportunity "to pursue [a] claim for withholding of deportation in reopened removal proceedings before an immigration judge." *Abubaka*, 2025 WL 3204369, at *6; *see Arenado-Borges*, 2025 WL 3687518, at *6 (collecting cases). These district court cases are not binding, but Respondents offer no reason the Court should not follow them. As it previously has, *see, e.g., Saadhom*, 2026 WL 698786, at *6; *Elshourbagy*, 2025 WL 3718993, at *8, the Court finds the reasoning in *Aden* and the other cases

ORDER ON PETITION FOR HABEAS CORPUS – 16

cited above persuasive and concludes that before Petitioner may be removed to a third country, he must be given written notice an opportunity to respond, and—if he has a fear of persecution or torture—reopened removal proceedings before an Immigration Judge.

Against this legal backdrop, Petitioner presents a number of unrebutted facts suggesting that Respondents will not provide him with him with adequate process regarding third-country removal absent an order from this Court. Prominent among these are facts of ICE's own current written policy. *See* Dkt. No. 1 at 33; *see also* Dkt. No. 1-10 (July 9, 2025, Memorandum to ICE Employees). Alarmingly, this policy provides that "[i]f the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed *without the need for further procedures*." Dkt. No. 1-10 at 2 (emphasis added); *see also Nguyen v. Scott*, 796 F. Supp. 3d at 736. In those cases where ICE has *not* received diplomatic assurances it deems credible, an officer will serve the noncitizen with a notice of removal, including the intended country of removal. Dkt. No. 1-10 at 2. However, the policy notes that ICE will "will not affirmatively ask whether the [noncitizen] is afraid of being removed to the country of removal." *Id.* ICE will "generally wait at least 24 hours following service of the Notice of Removal before effectuating removal," but in "exigent circumstances," ICE need wait only six hours. *Id.* If the noncitizen "does not *affirmatively* state a fear of persecution or torture if removed to the country on the notice within 24 hours," they will be removed to the third country. *Id.* (emphasis added).

These procedures fall far short of what court in this District and Circuit have held that due process requires. Respondents assert that a Court in the District of Massachusetts has "vacated the DHS Policy on Third Country removals." Dkt. No. 7 at 9 (citing *D.V.D. U.S. Dep't of Homeland Sec.*, No. C25-10676, 2026 WL 521557, at *44 (D. Mass. Feb. 25, 2026). But this

ORDER ON PETITION FOR HABEAS CORPUS – 17

is incorrect. As Petitioner points out, "[t]he D.V.D. litigation concerned an earlier version of the ICE guidance regarding third-country removals." Dkt. No. 10 at 10; *see also D.V.D.*, 2026 WL 521557, at *44 (setting aside "DHS's March 30, 2025 memorandum").

Respondents give no indication of what their current policy is, if it is not the policy outlined in the July 2025 memorandum, or whether any updated policy will bridge the gap between the process Petitioner seeks (and that courts have held is required) and the process provided by the policy documented in the record before the Court. This inspires absolutely no confidence that Petitioner's rights will be protected in the absence of a permanent injunction.

Once again, Petitioner meets the standard for injunctive relief. He has shown that he suffered irreparable injuries for which monetary damages are likely unavailable or inadequate to compensate him: his unlawful detention and violation of his due process rights. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). Petitioner is likely to suffer that injury again if Respondents attempt to remove him to a third country without the protections required by the Due Process clause, and he is likely to suffer even graver injury if a constitutionally deficient removal is effected. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (detainees with pending habeas petitions facing removal under Alien Enemies Act faced "an imminent threat of severe, irreparable harm"). The same evidence that shows Petitioner is unlikely to be removed to the Solomon Islands supports a finding that he is at risk of third-country removal. Were Petitioner to be "removed from the United States to the custody of a foreign sovereign . . . the Government [might] argue[], as it has previously argued, that no U.S. court ha[s] jurisdiction to order relief." *Id.* at 93. That is, the legal remedies by which Petitioner might redress this harm would be substantially diminished, if not extinguished entirely. In light of such serious harm to Petitioner, the balance of equities tips

ORDER ON PETITION FOR HABEAS CORPUS – 18

steeply in his favor, because his interest in avoiding the unlawful deprivation of his liberty outweighs the minimal burden on Respondents to provide notice and an opportunity to be heard if they wish to remove him. Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (citation modified). Under these circumstances, injunctive relief is appropriate.

Because Petitioner has demonstrated that injunctive relief is warranted regarding third-country removal, the Court will grant Petitioner's request to "[o]rder that Respondents may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings."

**3.     Petitioner Has Not Shown that Respondents' Third-Country Removal Policies Are Punitive Such That They Violate His Fifth and Eighth Amendment Rights**

In addition to the procedural concerns discussed above, Petitioner further alleges that his potential third-country removal pursuant to current ICE policy would violate the Eighth Amendment's prohibition of cruel and unusual punishment, the Fifth Amendment's prohibition of extrajudicial punishment, and the long-established rule, dating to *Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896), that no "infamous punishment" in addition to deportation may be imposed for immigration violations without a proper criminal trial. Dkt. No. 1 at 41.

In support of this argument, Plaintiff asserts that it has been reported that ICE has "attempted—and completed—an 'end-run' around the protections of the Convention Against Torture by deporting a group of migrants to Ghana, which sent them on to their countries of citizenship despite fears of persecution." *Id.* at 26 (citing Sarah Stillman, *Disappeared to a Foreign Prison*, The New Yorker (Dec. 12, 2025)). Petitioner alleges that the Trump administration "has handpicked countries known for human rights abuses for third country

ORDER ON PETITION FOR HABEAS CORPUS – 19

deportation agreements to scare people in the U.S. into self-deporting or to accept removal to their home countries," and that hundreds of noncitizens have been removed to third countries only to be met with mistreatment and summary, sometimes indefinite, detention. *Id.* at 32, 42. While the Court notes that Petitioner does not substantiate these allegations with admissible evidence (relying instead on hearsay news reports),[4] it notes also that Respondents do not deny them, and that "courts in this district and across the country have recognized that Petitioner is correct: the government is intentionally removing individuals to countries where they will be imprisoned." *Nguyen v. Bondi*, 2025 WL 3534168, at *9 (citing *Nguyen v. Scott*, 796 F. Supp. 3d at 734 (collecting cases)).

In this particular case, faced with the particular pleadings before it, the Court does not have sufficient basis for a finding that Respondent's third-country removal program is unconstitutional as a whole, or that third-country removal would be punitive as applied to Petitioner specifically. Cases in this District in which courts *have* found as much, "which were specific to a particular population and particular destination countries, do not extend to these circumstances." *Arenado-Borges*, 2025 WL 3687518, at *7 (citing *Nguyen*, 796 F. Supp. 3d at 734; *Abubaka*; 2025 WL 3204369, at *8.)

On this record, the Court cannot find that Petitioner's removal to a third country would constitute unconstitutional punishment. The request is DENIED without prejudice.

//

//

//

---

[4] Petitioner does provide numerous declarations related to third-country removal, but only in support of these propositions specific to Mexico: "Evidence submitted in other cases indicates that when ICE proposes Mexico as a third-country destination, Mexico often has not formally accepted the deportee, will not accept any deportee who is unwilling to go there, and does not necessarily give status to those who enter." Dkt. No. 1 at 25. But none of these facts show the policy is punitive, and, in any case, Petitioner does not appear to be at specific risk of removal to Mexico.

ORDER ON PETITION FOR HABEAS CORPUS – 20

# IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. No. 1). The Court further ORDERS:

(1)    Respondents SHALL:

    (a)    RELEASE Petitioner from detention **within 24 hours** of this order subject to the conditions in his preexisting Order of Supervision.

    (b)    **Within 48 hours** of his release, PROVIDE the Court with a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are PROHIBITED from:

    (a)    Re-detaining Petitioner without complying with applicable regulations including 8 C.F.R. § 241.13(i) as well as the constitutional requirements of Due Process.

    (b)    Removing Petitioner to a third country without at least 48 hours' written notice and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge;

(3)    Petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive is DENIED without prejudice.

(4)    Dated this 1st day of May, 2025.

_____
Tana Lin
United States District Judge

ORDER ON PETITION FOR HABEAS CORPUS – 21